UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE ARBITRATION BETWEEN<br><br>IDEAL PLASTIC CONTAINER COMPANY<br><br>Petitioner,<br><br>and<br><br>UFCW LOCAL 174 COMMERCIAL HEALTH CARE FUND AND COMMERCIAL PENSION FUND<br><br>Respondent | CIVIL ACTION NO: 07-cv-9699<br><br>NOTICE AND PETITION TO DISMISS/STAY ARBITRATION |

Petitioner, Ideal Plastic Container Company ("Ideal" or "Employer") moves for an Order, pursuant to Title 9, United States Code, Section 10, dismissing or staying an arbitration hearing noticed by the Respondents herein for October 31, 2007 and respectfully alleges:

1. Petitioner, Ideal, is a corporation duly organized and existing under the laws of the State of New Jersey, with its principal place of business at 80 South Dean Street, Englewood, New Jersey.

2. Respondent, UFCW Local 174 Commercial Health Care Fund and Commercial Pension Fund, (the "Fund") are unincorporated associations duly organized and existing under the provisions of E.R.I.S.A. (29 U.S.C. §1001 et seq.), with a principal place of business at 540 West 48th Street, New York, New York.

3. The jurisdiction of this court is invoked under Title 9, United States Code, and particularly Section 10 thereof.

4. On or about December 18, 2006, Petitioner entered into a Collective Bargaining Agreement (the "CBA") with Local 1245 of the United Food & Commercial Workers International Union relating to the terms and conditions of employment of certain of Ideal employees. A copy of the CBA is attached, marked Exhibit 1, and made a part hereof.

5. Article 15 (B) of the CBA provides:

"Notwithstanding any other provision of this Agreement, the parties specifically agree that any claim for failure by any Employer to pay any contribution due under this Agreement to any fund may be made and submitted for arbitration by any party hereto and/or by the Trustees of any Fund to which contributions are to be made pursuant to the provisions of this Agreement upon at least twenty (20) days written notice by certified mail to the last address of the Employer on record with the office of the Fund to which contributions are due and to George Sabatella, P.O. Box 245/254 Neptune Station, Brooklyn, NY 11224 as Arbitrator or to such other Arbitrators the parties here to may select. The award of the arbitrator shall be final and binding and enforceable in any court of competent jurisdiction".

6. Under color of the arbitration clause in the CBA, the Fund served upon Ideal a notice of arbitration before Arbitrator John Kennedy (the "Notice"). A copy of the notice is attached, marked Exhibit 2 and made a part hereof.

7. The Arbitrator identified in Article 15 (B) of the CBA, George Sabatella, is now deceased.

8. According to Article 15 (B) of the CBA, any arbitrator other than George Sabatella is to be selected by the parties. [Emphasis added].

9. The Fund has violated the right of Ideal under the CBA by unilaterally selecting and designating John Kennedy as the Arbitrator for the dispute to which reference is made in the

Notice.

WHEREFORE, Petitioner moves the Court for an Order dismissing or staying the arbitration noticed by the Fund for October 31, 2007 before John Kennedy, Arbitrator and directing Respondent to engage in a process of selecting an arbitrator jointly with Petitioner.

_____
JONATHAN J. LERNER
JL 2916
STARR, GERN, DAVISON & RUBIN, P.C.
Attorneys for Petitioner
105 Eisenhower Parkway
Roseland, New Jersey 07068
973-403-9200

Dated: October 31, 2007
10/31/07/F:\Kathy\WP\Supreme Oil\Ideal Plastic and Local 174 Fund\notice and petiton to stay arbitration.wpd

EXHIBIT "1"

AGREEMENT made and entered into this 8~~th~~ 18th day of ~~November~~ December, 200~~3~~ 6 by and between UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL UNION, Local 1245 located at 275 Paterson Avenue, Little Falls, New Jersey 07424 (hereafter the "UNION") and IDEAL PLASTIC CONTAINERS COMPANY, 81 South Dean Street, Englewood, New Jersey (hereafter the "EMPLOYER").

WITNESSETH:

WHEREAS, the parties desire to enter into an agreement relating to wages, hours and other conditions of employment for the purpose of establishing and maintaining harmonious relations between them, and to that end, provide for a fair and peaceful adjustment of all disputes which may arise between them,

NOW, THEREFORE, in consideration of the mutual covenants herein contained, the parties agree as follows:

## ARTICLE 1 - UNION RECOGNITION

The Employer hereby recognizes the Union as the sole collective bargaining agent on behalf of all of its production, shipping, receiving, and maintenance employees and other such employees performing work incidental thereto, employed by the Employer, in its establishment or any and all other establishments now operated, or hereinafter acquired and operated during the term hereof, by the Employer, located at its 100 South Dean Street, Englewood, New Jersey, excluding non-working supervisors and such other categories as are excluded by the Labor Management Relations Act of 1947, as amended.

## ARTICLE 2 - UNION SHOP

(A) It shall be a condition of employment that all employees of the Employer covered by this Agreement, who are members of the Union in good standing on the date of the signing of this Agreement shall remain members in good standing and those who are not members on the date of the signing of this Agreement shall, on or after the sixtieth (60th) day following the date of the signing of this Agreement, become and remain members in good standing in the Union. It shall also be a condition of employment that all employees covered by this Agreement and hired on or after the date of this Agreement shall, on or after the sixtieth day following the beginning of such employment, become and remain members in good standing in the Union.

(B) All new employees, if and when hired, shall be deemed temporary and on a trial basis for a period of sixty (60) calendar days and thereafter they shall be considered as regular employees. All such new employees shall not be granted the same benefits, terms and working

conditions as regular employees until they shall be required to become Union members as a condition of continuous employment, which shall be on or after the thirtieth day subsequent to the beginning of their employment.

(C) The Employer shall be required to discharge any employee upon notification by the Union to the effect that said employee is not in good standing, within the provisions of the Labor-Management Act of 1947.

## ARTICLE 3 - CHECK-OFF OF UNION DUES

(A) Subject to delivery by the Union to the Employer of written irrevocable assignments duly signed by each employee as required by law, the Employer will deduct on a weekly basis in each month from the wages of each employee and remit to the Union monthly, not later than the 15th day of each calendar month, the dues or initiation fee payable by such employee to the Union.

(B) The Employer will cause each monthly remittance to be accompanied by a full list of its employees, noting thereon employees added or removed from the list during the preceding month, the respective dates of such additions and removals and the reasons therefore, and, in the case of an added non-Union employee, also the word "New."

(C) It is agreed between the Employer and the Union that should the Employer fail to comply with the terms of this section, that the Union shall have the right to order a work stoppage of the employees of the Employer, and that such work stoppage shall not be a breach of this contract.

## ARTICLE 4 - HOURS

(A) Forty (40) hours shall constitute a standard work week, which shall be divided into eight (8) hours per day (Monday through Friday inclusive) for all employees.

(B) The standard work day shall be nine (9) consecutive hours, with one (1) hour off for lunch, the lunch hour being not later than five (5) hours after starting time.

With the consent of the Union, the Employer may schedule staggered lunch periods where required in order to protect the production schedule and raw materials or perishable merchandise.

(C) All work performed after eight (8) hours of work shall be considered overtime and shall be paid for at the rate of time and one-half the regular rate of pay.

(D) Overtime, when available, is to be distributed among all employees as equally

as possible. The Employer shall notify its employees by the lunch break if they are to be required to work overtime on that day and by the lunch break on Friday if they are required to work on Saturday. Shorter notice may be given only in the event of unforeseen circumstances not within the control of the Employer. No employee shall be required to work more than reasonable hours of overtime, Monday through, Friday.

(E) Providing that the employee has worked or been paid for the first five (5) days of the work week, the first eight (8) hours of work performed on Saturdays shall be paid at the rate of time and one-half. All work performed over eight (8) hours on Saturdays shall be paid at the rate of double time.

(F) Employees shall not be required to work on Sundays or the holidays set forth in Article 8, except as provided in paragraph G of this Article. If an employee agrees to work on a Sunday or holiday, or if an employee is called in to work on a Saturday, the Employer guarantees four (4) hours work on such days, or four (4) hours pay in lieu thereof, at the rate of pay called for on such days.

(G) Weekend Overtime - During the period where the Employer works seven (7) days per week, weekend overtime shall be posted by Thursday mid shift. The shop steward shall seek voluntary workers in order of seniority. In the event insufficient workers volunteer, volunteers shall be sought from Supreme Oil. If the Employer's staffing needs are not met, the Employer may require Ideal workers to work the overtime in inverse order of seniority. Inverse order of seniority shall be rotated each time overtime is required. If an employee commits to working or is required to work and fails to appear without good and sufficient reasons, there shall be discipline. Discipline shall be no overtime for two (2) weeks for the first offense; no overtime for one (1) moth for the second offense; and suspension for the third offense.

(H) All employees shall be granted a fifteen (15) minute rest period within the first three (3) hours worked.

## ARTICLE 5 - WAGES

(A) There shall be no wage reduction in any case where employees receive higher wages than those provided for in this Agreement. All employees covered by this Agreement shall receive no less than the minimum weekly or hourly rates for all job classifications as set forth herein in Schedule A attached hereto.

(B) All employees who have completed progression shall receive the following wage

increases as follows:

    Effective July 1, 2003 6  $.30 5 per hour *
    Effective July 1, 2004 7  $.25 per hour
    Effective July 1, 2005 8  $.20 5 per hour

All straight time retroactivity is to be paid on or before December 22, 2006.
All overtime retroactivity is to be paid on or before January 19, 2007.

  NEW HIRES:

  Anyone hired after July 1, 1997 with respect to wages -will be put on a two year progression.

  (C) No employee shall suffer a reduction in pay because of a transfer from one job to another. Employees who are temporarily switched from a lower paid position to a higher paid position shall receive the higher rate of pay for the job to which they are switched for all hours worked on that job.

  (D) An employee who is injured in the course of his regular employment and who as a result of such injury shall be unable to continue work for the remaining part of the day shall receive eight (8) hours straight time pay for such day, provided that the employee present to the Employer a certificate of a duly licensed physician who examined the injury, stating that the employee was unable to continue work on .that day because of said injury.

### ARTICLE 6 -SHIFTS, PREMIUM PAY AND ADDITIONAL SHIFTS

  (A) All employees employed on a regular scheduled second shift shall receive a premium of forty cents (.40¢) per hour over the scheduled minimum hourly day rates for their respective classifications. All employees on a regular scheduled third shift shall receive a premium of sixty cents (.60¢) per hour over the scheduled minimum hourly day rates for their respective classifications. This premium shall also apply to the holiday pay of any employee who has worked on such night shift for one or more months immediately preceding a paid holiday, and to the vacation pay of any employee who has worked on such night shift for one or more months immediately preceding his vacation. Night shift employees whose shift includes hours worked on a Sunday or holiday shall receive the appropriate Sunday or holiday premium in lieu of the night shift premium for the hours worked on a Sunday or holiday. A night shift employee whose fifth (5th) day normally includes work performed on a Saturday shall not receive any Saturday premium for the hours worked on a Saturday, but shall receive his or her regular night shift premium.